Good morning and may it please the court, my name is Christina Hellman and I represent the petitioner Keith Ingram. I plan to reserve about two minutes of my time for rebuttal. There are two main questions before this court today. The first is one of procedural default, whether Mr. Ingram's claim was defaulted, and the second is a question of the merits, whether Mr. Ingram received effective assistance of counsel, and the answer to both of those questions is no. On the issue of procedural default, as we argued in the reply brief and as the state has implicitly conceded in their 28J letter, there is no procedural default in this case. The post-conviction court noted a fact that can, in some cases, give rise to a default, but went on to consider the claim of effective assistance of counsel on the merits, and so what we have under this court's precedent in Towery, which I cited in the reply brief, and Smith, which was cited in the 28J letter, is a state court finding on the merits that this court can review. On the merits, I wanted to make one, to emphasize one aspect of the claim to this court this morning, and that that is, this is a claim of a failure in the duty to advocate, not in a failure of a duty to anticipate a new ruling. A primary and indeed a core function of a defense counsel is to take available tools, such as the law that exists at the time, apply them to your client's case, and be an advocate for your client. That was demonstrated by the attorney in the Wolyat case, who used existing Oregon law to great success for his client, and its failure and the lack of advocacy is demonstrated in Mr. Ingram's case, whose attorney never made the motion for judgment of acquittal, even though it was available to him on the fact that he was a lawyer. Kennedy. Well, but you would agree, if the lawyer can fairly conclude during the course of the trial that, well, I don't want to make this motion because I'm, you know, pretty sure that it's going to fail, that wouldn't be ineffective assistance, would it? I'm pausing to decide exactly how to respond to your argument, Your Honor. I'm going  to say, yes, in some circumstances, that would be ineffective assistance. If the attorney, and it matters why the attorney is saying, I think this is going to fail. If he looks at the law and facts and says, wow, you know, the law is squarely foreclosed against me, or the facts are so bad that they do not support this motion at all, and makes a strategic decision not to raise the motion, then that's not  But if he just sort of throws up his hands in, you know, oh, wow, this is maybe a difficult motion to make, that is still a failure in advocacy. Being a defense attorney doesn't mean that you're always given easy wins, but it does mean that you need to advocate for your client when that opportunity presents itself, as it did here. Well, what I'm trying to get at is the test. So we don't actually, you know, take the test and have a defense attorney throw up his hands, right? I mean, you know, we make the, I guess, like an objective decision based on what the record was at your trial, right? That's correct. So then what's the test? So if reasonable attorneys can differ as to whether or not the motion would have been successful, is it or is it not ineffective assistance on that basis? It would not be ineffective assistance on that basis. However, in this case, reasonable attorneys could not differ. That this case did, the facts of this case called out for a motion for judgment of a quote on the case. All right. Then you'll have to tell me why that's true, because I'm not sure I read the record that way, but go ahead. For several reasons. So the facts as they were testified to at trial are not the facts that the state court found, and that was the basis for our argument that the state court's decision was unreasonable. The state court said that the petitioner continued to drive the victim in the car after she expressed the desire to return home. This is all from Excerpt of Record 27. And that rather than taking her home, he expressed an intent to bury her, to maybe looking for a place to bury her. But in sequence, that's not what happened. What happened is these two people who had an on-again, off-again, currently off relationship went on a ride looking for Mr. Ingram's car. They drove to the lookout and they stopped. And she said, why are we here? I'd like to go home. And then that's when he made his comment about burying her. And after which they left the lookout, and his driving took her closer to her house. And so the way that the state court characterized the record is not actually what the trial testimony was. On that basis, under Oregon law, which requires evidence of a substantial interference with liberty, and taking into account other facts from the trial, including the fact that Mr. Ingram wanted Ms. Stupkin to leave so she could get him a phone number and money that he was owed, and the fact that she was taken closer to her house, and that she was not isolated, indicates that this was exactly the kind of case that an advocate would have pressed a motion for judgment of acquittal, especially in light of the fact that the kidnapping charge was the most serious charge, and resulted in a consecutive sentence of 111 months. So just to clarify, we're looking at the PCR court's Strickland ruling under EDPA. So we're in the doubly deferential realm that the Supreme Court talked about in Merzion's and other cases. Isn't that correct? Yes. So we're actually looking at whether the PCR court's application of Strickland was an unreasonable application that no reasonable appellate court could have so applied it. So how do we get there? I mean, you have one reading of the record. The PCR court had a different reading of the record. And we're looking at the PCR court's analysis of whether the deference owed to the defense attorney was a reasonable application of Strickland or not. Correct. So you get there in several ways. First of all, as I argued, that the factual finding was itself unreasonable. And so when the post-conviction court decided its Strickland analysis, it was based on a misreading of the record. And the second point was the point that I made to this court a little bit earlier, that it characterized the claim as one of a failure to anticipate an argument, that counsel could not have been unreasonable to make this motion because Wool yet had not been decided yet. And that's an incorrect assessment of the claim. A failure to anticipate claim would be something like an attorney who failed to raise an apprendee argument 10 or 12 years before an apprendee came out. You're not requiring an attorney to have the power to see into the future, but an attorney is required to take the law that is in effect at that time and use it in his client's case, which is what has not happened here. And so it's unreasonable for the court to look at the claim and say, oh, this was a failure to anticipate rather than a failure to advocate. Although there is the deference provision in NPA, it is – there is no deference when the decisions are unreasonable. And that was the position that we took in this case, that the decision that Strickland – that the attorney complied with the requirements of the Sixth Amendment as articulated in Strickland. That was an unreasonable decision. Kagan. Did you want to save the rest of your time? Yes. Thank you, Your Honor. Thank you. We'll hear from McEverman. May it please the Court, Counsel, Greg Rios for Superintendent Jeff Reno. My plan this morning is to focus on the merits and to leave our procedural default argument to the briefing and to the 28-J letter unless the Court has questions. On the merits, the issue is, as discussed, whether there was an unreasonable application of Strickland by the State post-conviction court. And specifically, what the ruling at issue was, was that post-conviction court's determination that a reasonable attorney would not have pursued this argument because it would have been highly unlikely to succeed. And that finding both encompassed finding that the attorney wasn't professionally unreasonable and, under the prejudice prong, that no prejudice would have resulted because the provision would have been unlikely to have been granted. Now, there was another finding in addition to those findings by the post-conviction court, and those findings are at, I think, 25 through 28 of Appellant's extra foot record, the State post-conviction court's findings. While there were additional findings that it was a failure to anticipate Wooliap, there were also findings that the motion just would not have succeeded when you looked at the totality of the evidence from the moment that Petitioner picked the victim up and before he eventually let her go after violently preventing her from trying to flee his car. Could you address the unreasonable determination of the facts issue that your opposing counsel raises that, in fact, the sequence of events described by the State PCR court isn't supported by the record? Yes. And I think I understand why that argument is being made, because essentially the post-conviction court's holding that there was no unreasonable application of Strickland was based on a determination of State law, and that is what the element of substantially interfering with another's liberty was, and the type of evidence that is used to, that is necessary to support establishing that element. That is a State determination of State law that this court can't reexamine. So I believe that the claim of an unreasonable determination of facts may be to try to cut through or get over that barrier. However, this was just a, the post-conviction court was simply characterizing undisputed evidence at trial. I, the State doesn't, doesn't even argue with Petitioner's presentation of the facts as to the sequence of events. What the State would, would point out is that the fact that he's driving her closer to her house has nothing to do with whether he had the intent to substantially interfere with her personal liberty. She was still in the car. He didn't take her home. He took her to his house. And then important facts that were not discussed in Petitioner's recitation of the facts is she tried to leave his car, and he, at least two different times, grabbed her by the hair and pulled her back. That is evidence of, that is, that is sufficient to prove his, his intent. Was that while they were parked in front of his house? Because the, the State court seemed to think it was important that it wasn't just the events that happened in front of his house, but that there was also this ride and she had asked to be taken home and, and that that was a part of the evidence of his intent to substantially interfere. Agreed. Yes. And, and we'd agree with that. That is all fair, all of that evidence is fair game because what you're looking at is what his intent was. The only way to know what his intent was is circumstantial evidence surrounding the event itself. It doesn't matter whether, what the victim believes, where she was being taken or, or anything like that. It is what, a rational fact finder. And again, going back to a question you asked Judge Okuda was, don't we have double deference? And that's right. And we even have an additional layer of deference, which is the extremely deferential NJOA standard that would have applied in the State court, which is whether any rational fact finder could have found evidence to find the, the element established, and that is the like most favorable to the State in resolving all conflicting inferences in the favor of the State. So the State PCR court would be looking through the lens of that standard of review, which could include any evidence that a rational fact finder could consider to find that the element was established. Did that answer your question? Yes, thank you. And the point that I would like to stress most strongly is that this, that the PCR court's determination of the Federal question did rest on its interpretation of Oregon State law. The respondent agrees that it isn't necessarily a failure to anticipate the case. The stronger, the stronger basis for the denial of relief at the State PCR level was just that it wasn't, there was sufficient evidence to support a rational fact finder's determination that he did have the intent to substantially interfere with, with the victim's liberty. Is that what the contest was on the defendant's intent as opposed to whether or not, you know, the asportation element and that, you know, that movement kind of stuff? No? Yes, this is all about intent. Because the way that the kidnapping statute reads is that the defendant has to have the intent to substantially interfere. That's the intent element. And the conduct elements are either movement from one place to another, asportation, or a secret confinement or a confinement. So what Wolyak said is, looking at what kind of evidence supports a finding of intent, a short amount of movement, an insubstantial amount of movement without any other evidence of that intent, and while the defendant has the intent to interfere with, with the victim's liberty, the defendant has to have the intent to substantially interfere with that element. And so that's why this case really isn't even, I think that Petitioner's argument is, his attorney should have raised it because then he would have been Mr. Wolyak. Well, that's not the case because this, Wolyak is beside the point because this is not a case of brief incidental movement while another crime was occurring. In fact, I think the only fair reading of this record is that the other crimes that were charged, a menacing and appointing a firearm at another, were incidental to the detention and unlawful transportation of the victim against her will. So I don't think I have anything else unless the Court has further questions. Nope. Apparently not. Thank you. The reply would ask that you affirm the District Court's denial of relief. Thank you. I have one point to make in rebuttal. The State has said in their brief and then again today that Mr. Ingham violently prevented Stephen from leaving the car. And again, that's not an accurate characterization of the record. If you look at supplemental excerpt of record 21 and 22, the uncharged assaultive conduct happened after she got out of the car when she jumped out of the car and ran away towards the trailer house, excerpt of the 21. And that's when he reached over and grabbed her hair. So he's not, at that point, detaining her in the car, which seems to be the primary reason for the State Court's decision that she's confined in this car and deprived of her liberty. She's not violently detained in the car. Our position remains that the factual issues in this case were such that the attorney should have fulfilled his duty to advocate, should have filed that motion, and that had he done so, the result of the case would have been different. Thank you very much. Thank you. The case of Ingham v. Primo is submitted.
judges: Alarcon, Tashima, Ikuta